**Nadja De Magalhaes SPENCER,**
**Plaintiff,**

**v.**

**BANCO REAL, S.A., Waldyr Bastos, Jack Sitser and Newton Bleffe, Defendants.**

No. 79 Civ. 6318.

United States District Court,
S. D. New York.

Sept. 25, 1980.

Vladeck, Elias, Vladeck & Engelhard, New York City, for plaintiff; Jane S. Lauer, New York City, of counsel.

Epstein, Becker, Borsody & Green, New York City, for defendants; Gregory K. Hiestand, New York City, of counsel.

Equal Employment Opportunity Commission by David Preminger, New York City, Supervisory Trial Atty., Equal Employment Opportunity Commission by Leroy D. Clark, Joseph T. Eddins, Lutz Alexander Prager, Marcia B. Ruskin, Washington, D. C., of counsel, amicus curiae.

## OPINION AND ORDER

SOFAER, District Judge:

Plaintiff brings this action against her former employer, Banco Real S.A., a corporation organized under the laws of Brazil and doing business in New York, and certain officers of the bank, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff asserts alternative bases of federal jurisdiction under 42 U.S.C. § 1985(3) and the International Banking Act of 1978, as amended, 12 U.S.C. §§ 3102, 3106a. De-

fendant has moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that the court lacks subject matter jurisdiction, and pursuant to Rule 12(b)(6), on the ground that the complaint fails to state a cause of action.

On or about August 9, 1979, plaintiff filed discrimination charges against the defendant bank with the New York State Division of Human Rights ("Human Rights Division"), as well as with the Equal Employment Opportunity Commission ("EEOC"), contending that she was the victim of sex discrimination in connection with her training and opportunity for advancement. As required by Section 706(c), 42 U.S.C. § 2000e–5(c), the EEOC deferred filing this charge for sixty days, pending investigation and conciliation efforts in the state agency.

In November 1979, while plaintiff's discrimination charge was still pending before the Human Rights Division, defendant discharged her, allegedly for wrongfully taking certain confidential bank documents without authorization. On November 9, 1979, defendant instituted a state court replevin action to recover the documents allegedly taken. Plaintiff denied having taken the documents and, on or about November 13, 1979, she filed two additional charges with the Human Rights Division and the EEOC, claiming that both her discharge and the state court replevin action were in retaliation for the exercise of her rights under the Constitution and Title VII.

On November 15, 1979, two days after filing her retaliation charges, plaintiff removed the state replevin action to this Court pursuant to 28 U.S.C. §§ 1441, 1443(1), claiming that the state action was brought in retaliation for her charges of employment discrimination. Relying upon City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), this Court on January 21, 1980 granted defendant's motion to remand the replevin action. Irrespective of the merits of plaintiff's claims, removal was clearly inappropriate.

Meanwhile, on November 26, 1979, while defendant's motion to remand was pending,

plaintiff instituted the present action. The complaint is based on the initial charge of employment discrimination filed with the New York State Division of Human Rights in August 1979 (and referred to the EEOC sixty days thereafter), as well as on the two charges of retaliation filed in November 1979 and still before the Human Rights Division.[1] At the time that the present complaint was filed, no right–to–sue notice had been issued by the EEOC; in fact, only 49 days had passed from the day on which the original charges were filed with the EEOC.

On December 14, 1979, plaintiff's attorney wrote to the EEOC to request early issuance of notices of right to sue, stating without explanation that "actions by respondent have made voluntary settlement virtually impossible and necessitate the prompt institution of an action in federal court ..." On or about January 11, 1980, after the mandatory 60–day period for state agency review of the retaliation claim had expired, defendant received an EEOC notice of the filing of· plaintiff's retaliation charges, as required under 42 U.S.C. § 2000e–5(b). On the same day, the EEOC also issued a right–to–sue notice with respect to plaintiff's August 9 charge, although at that time only approximately 100 days had passed from the day on which this charge was filed with the EEOC. Five days later, on January 16, 1980, the EEOC issued a right–to–sue notice with respect to plaintiff's retaliation charges. At that time, only five days had passed since the retaliation charges had been filed with the EEOC.

Defendant promptly wrote to the EEOC, objecting to the premature issuance of the right–to–sue notices. On January 23, 1980, Arthur Stern, Assistant Director of the EEOC New York District Office, responded

that the notices were issued .prematurely because "processing [plaintiff's] charge to conclusion would not have been accomplished prior to the expiration of 180 days of its filing."

Meanwhile, defendant sought dismissal of plaintiff's complaint in this Court. Plaintiff, however, repeatedly requested delays. Each delay brought a change in the allegedly relevant facts; each change in the facts necessitated new legal arguments. In April 1980, plaintiff's attorney advised the court that the EEOC wished to file a brief *amicus curiae*, addressing the propriety of issuing premature right–to–sue notices. Leave to file was granted, and on May 9 the EEOC submitted its brief together with the affidavit of Edward Mercado, Director of the EEOC New York District Office. The affidavit states that the January 11, 1980 right–to–sue letter was issued to plaintiff because "there were approximately 700 matters pending ahead of the case at bar" and "it was unlikely that the New York EEOC office could reasonably expect to complete processing of the instant case within the statutory waiting period of 180 days from the filing of the complaint." Mercado Aff. ¶ 6.

I

■ Defendant's motion to dismiss that portion of plaintiff's claim based on 42 U.S.C. § 1985(3) is clearly meritorious. The cause of action that plaintiff asserts is created by Title VII. *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) ("deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985[3]"). The complaint similarly fails to state a claim under Section 3106a of the International Banking Act.

1. An affidavit submitted by plaintiff's attorney indicates that the instant federal action is based solely on the charges of retaliation filed with the Human Rights Division in November. *See* Lauer Aff., January 21, 1980, ʻ 2. The complaint makes clear, however, that plaintiff is presently suing on both the August and November charges. In her initial charge, plaintiff contends that she was a victim of sex discrimi-

nation by her employer in connection with her training and opportunity for advancement. In her November charges, plaintiff claims that she suffered a retaliatory discharge for filing the original charge and that in further retaliation defendant instituted a state court action for return of confidential documents allegedly removed from defendant's offices by plaintiff.

As even plaintiff concedes, Section 3106a creates no substantive right; it simply requires foreign banks covered by the Act to comply with laws prohibiting discrimination, including Title VII. To allow plaintiff to circumvent the administrative procedures set forth in Title VII by implying a cause of action under Section 3106a would plainly contravene the principles enunciated by the Supreme Court in *Novotny*.

## II

■ At the time that the complaint was filed, defendant's motion to dismiss plaintiff's Title VII claim would also have been meritorious, since she had not been issued a right–to–sue notice. But plaintiff successfully delayed a ruling on defendant's motion until she had obtained early right–to–sue notices from the EEOC. Plaintiff now opposes the motion on the basis of these notices, the latest of which purports to be based on the expiration of a full 180 days from the filing of plaintiff's first charge. Plaintiff moves to amend her complaint to include the notices, and she argues that the amendment would render her complaint legally sufficient.

The motion to amend turns, however, on the legality of the early right–to–sue notices: if such notices are invalid, the requested amendment would fail to cure any defects in the complaint. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The issuance of valid right–to–sue letters has been held to cure jurisdictional defects. *See Rodriguez v. Board of Education of Eastchester Union Free School District*, 620 F.2d 362, 365 (2d Cir. 1980); *Berg v. Richmond Unified School Dist.*, 528 F.2d 1208, 1212 (9th Cir. 1975), *vacated on other grounds*, 434 U.S. 158, 97 S.Ct. 806, 50 L.Ed.2d 788 (1977). But no case has given such effect to invalid notices.

The EEOC has authorized itself to issue early right–to–sue notices in Section 1601.-28(a)(2) of its procedural regulations. 29 C.F.R. § 1601.28(a)(2). That regulation provides that, when a claimant requests in writing that a notice of right–to–sue be issued, the Commission may issue the notice "at any time prior to the expiration of 180 days from the date of filing the charge with the Commission," provided that (1) the respondent is a non–governmental entity, and (2) a designated official "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days ... and has attached a written certificate to that effect." *Id.*

The EEOC contends that this regulation is a valid exercise of its statutory power "to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." Section 713(a), 42 U.S.C. § 2000e–12(a). It argues that issuance of early right–to–sue notices is consistent with the language and purposes of Title VII and is supported by important policy considerations.

### A. *The Statutory Language and Purpose*

Section 706(f)(1) of Title VII provides in part:

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference ... [from a state agency], whichever is later, the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ....

42 U.S.C. § 2000e–5(f)(1). This provision requires that, upon the occurrence of either of two events after a charge is filed, the EEOC must give notice to the aggrieved person, and that party may thereafter bring a civil action in federal court. The two circumstances in which the aggrieved party must receive notice are (1) if the Commission dismisses the charge, and (2) if 180 days pass from the time of filing and the Commission has neither commenced an ac-

tion nor entered into a conciliation agreement in the aggrieved party's behalf.

Plaintiff and the EEOC argue that, although Section 706(f)(1) requires the Commission to issue a notice after 180 days has passed, it does not prohibit the issuance of a notice before 180 days. They draw support for this contention from *Bryant v. California Brewers Association*, 585 F.2d 421, 425 (9th Cir. 1978), *vacated on other grounds*, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980), and from several District Court decisions, *see, e. g., Milner v. National School of Health Technology*, 409 F.Supp. 1389, 1392 (E.D.Pa.1976); *Westerlund v. Fireman's Fund Insurance Co.*, 10 Empl.Prac.Dec. ¶ 10,456 (N.D.Cal.1975).

The Commission argues that an early notice is also consistent with the purpose of Section 706(f)(1). The 180–day period is intended to assure "that the time will be available for and used to conciliate," *Rossini v. Ogilvy & Mather, Inc.*, 19 Fair Empl. Prac.Cas. 1328, 1330 (S.D.N.Y.1979); when investigation and conciliation are impossible, the period becomes a useless impediment to the plaintiff. The Commission argues that "[f]orcing victims of discrimination to mark time simply for the sake of letting time pass when conciliation and investigation are impossible is not only senseless, but a 'travesty.' *Bryant v. California Brewers Ass'n, supra*, 585 F.2d at 425. Nothing in Title VII or its legislative history warrants such irrational and harmful behavior." EEOC Memorandum of Law at 5.

The language of Section 706(f)(1) is not so easily neutralized, however. Judge Renfrew found that statute's wording "convoluted," but unambiguous: "In order to accept the position advanced by plaintiffs, the Court would have . . . to ignore the conditional 'If . . .' phrasing of the statute." *Budreck v. Crocker National Bank*, 407 F.Supp. 635, 639 (N.D.Cal.1976). Numerous other courts are in accord. *See, e. g., Grimes v. Pitney Bowes, Inc.*, 480 F.Supp. 1381 (N.D.Ga.1979); *Hiduchenko v. Minnesota Medical & Diagnostic Center, Ltd.*, 467 F.Supp. 103 (D.Minn.1979); *Loney v. Carr-*

*Lowrey Glass Co.*, 458 F.Supp. 1080 (D.Md. 1978); *Jones v. Pacific Intermountain Express*, 10 Fair Empl.Prac.Cas. 914 (N.D.Cal. 1975).

Descriptions of the 180–day provision in the legislative history also indicate that the right to bring federal suit is contingent, not upon the mere issuance of a right–to–sue notice, but rather upon the occurrence of one of the express conditions–dismissal or expiration of 180 days without agency action. As a section–by–section analysis of the bill presented to the Senate with the Conference Report stated:

> With respect to cases arising under this subsection, if the Commission: (a) has dismissed the charge, or (b) 180 days have elapsed from the filing of the charge without the Commission, or the Attorney General, as the case may be, having filed a complaint under section 706(f), or without the Commission having entered into a conciliation agreement to which the person aggrieved is a party (i. e. a signatory) the person aggrieved may bring an action in an appropriate district court within 90 days after receiving notification.

118 Cong.Rec. 7166, 7168 (1972). This analysis makes clear that occurrence of one of these two events is a necessary–not merely a sufficient–condition for commencement of private civil actions. This Court must heed the admonition of the Supreme Court and "reject any suggestion that the EEOC may adopt regulations that are inconsistent with the statutory mandate. As we have held on prior occasions, its 'interpretation' of the statute cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver*, —— U.S. ——, ——, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980) (footnote omitted).

The statutory scheme of Title VII, moreover, suggests that exhaustion of the 180–day period was intended to be a jurisdictional prerequisite. Title VII was designed not merely to permit investigation and conciliation by the EEOC, but rather to require such agency action and to place primary responsibility for disposing of complaints in the administrative process. Under Section 706(c), once a charge is properly before the

EEOC for consideration, the EEOC *"shall"* notify the respondent employer of the charge within ten days, and *"shall"* investigate the charge. If after investigation the agency finds reasonable cause to believe the charge is true, it *"shall"* attempt to settle the dispute through conciliation. 42 U.S.C. § 2000e–5(b). Congress clearly contemplated that the Commission would endeavor to fulfill these statutory mandates and that a complainant could resort to the federal courts only after the Commission had resolved the charge or spent 180 days attempting to do so. The section–by–section analysis of the Conference bill stated:

> The retention of the private right of action ... is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission or Attorney General does not act with due diligence and speed.
>
> *It is hoped that recourse to the private lawsuit will be the exception and not the rule*, and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General, as appropriate.

118 Cong.Rec. 7166, 7168 (1972) (emphasis added).

The Supreme Court has indicated it accepts this construction of the statute. In *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court held that the 180–day waiting period before a private Title VII action can be brought imposes no limitation on the EEOC's power to file suit in federal court after that period expires. The Court explained that the purpose of the 180–day provision was to provide an alternative enforcement procedure for complainants dissatisfied with the pace of EEOC proceedings. Significantly, in describing that procedure, the Court noted that the right to sue would not arise until after 180 days had expired:

> The 180–day limitation provides only that this private right of action does not arise until 180 days after a charge has been filed. Nothing in § 706(f)(1) indicates that EEOC enforcement powers cease if

the complainant decides to leave the case in the hands of the EEOC rather than to pursue a private action.

> In short, the literal language of § 706(f)(1) simply cannot support a determination that it imposes a 180–day time limitation on EEOC enforcement suits. On the contrary, a natural reading of § 706(f)(1) can lead only to the conclusion that it simply provides that a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, *but that he must wait 180 days before doing so.* After waiting for that period, the complainant may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC.

*Id.* at 361, 97 S.Ct. at 2452 (emphasis added).

Another factor indicating that Congress intended to require complainants to wait 180 days before gaining access to federal court is the express authorization for both the EEOC and the Department of Justice to initiate suit before the statutory period and to seek preliminary relief. 42 U.S.C. § 2000e–5(f)(2). That Congress provided the Commission with early access to federal court when necessary suggests that private parties were not to be permitted such access as a routine matter.

Finally, the statutory scheme undercuts the assertion that a 180–day delay in filing suit is a "travesty" or unconscionable when the EEOC certifies in advance that it will be unable to complete its duties within that period. The Supreme Court in *Occidental Life* noted that, in amending Section 706 in 1972, Congress was acutely aware of the "enormous backlog of cases before the EEOC and the consequent delays of 18 to 24 months encountered by aggrieved persons awaiting administrative action on their complaints." 432 U.S. at 369, 97 S.Ct. at 2456 (footnotes omitted). Statements during the debates suggest that Congress anticipated that the backlog would not abate; but, rather than diminishing the agency's

authority, the 1972 amendments "substantially increased the workload of the EEOC .... *Id.* at 370, 97 S.Ct. at 2456. Thus, in drafting the 180–day provision, Congress protected aggrieved individuals only from what it regarded as undue delay–by definition a period of 180 days without final agency action, for whatever reason. If such a result is a "travesty," it is one that Congress intended, for it sought to compel attempts to determine or settle Title VII disputes at the agency level before resort to the federal courts. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1972).

Given the language and legislative purpose of Section 706(f)(1), both the Second Circuit and the Supreme Court seem likely to construe the 180–day period as mandatory. Those courts have read other requirements of Title VII as mandatory. *See, e. g., Mohasco Corp. v. Silver, supra; DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, *modified*, 520 F.2d 409 (2d Cir. 1975). In *Mohasco*, the Supreme Court refused to tolerate any deviation from the "literal reading" of the statutory scheme, —— U.S. at ——, 100 S.Ct. at 2496, even though the consequence of its ruling was to bar as untimely a *pro se* plaintiff's claim for relief. The Court stated: "Even if the interests of justice might be served in this particular case by a [different reading of the statute], in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at ——, 100 S.Ct. at 2497.

Those cases that allow early resort to the federal courts in special circumstances undercut, rather than support, the Commission's claimed power to issue early notices routinely. In *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975), plaintiff sued in federal court on the basis of two charges, the earlier of which had been pending before the EEOC for the required 180 days. The Second Circuit rejected the motion to dismiss the second charge. The Court's ruling was not based on the theory that the EEOC is empowered to issue right–to–sue notices before 180 days. On the contrary, the Court expressly stated that, "absent the dismissal of a charge by the EEOC, the Notice should not issue until the charge has been before the Commission for at least 180 days." *Id.* at 412. The motion to dismiss was denied because of "the circumstances of this case," which included the fact that "in this case there was a prior charge against the same employer that had been pending for more than the required time, and it was clear that no conciliation was likely." *Id.* The same principle underlies and justifies other decisions refusing to dismiss claims filed before the 180–day period has passed.[2]

**2.** In *Lo Re v. Chase Manhattan Corp.*, 431 F.Supp. 189 (S.D.N.Y.1977), Judge Duffy permitted a claimant to whom no right–to–sue letter had been issued at the time the action was filed to join as co–plaintiff in a class action. At least two of the representatives had been issued valid notices before filing the complaint, and all the co–plaintiffs had received valid notices by the time the motion to dismiss was filed. Moreover, all the right–to–sue notices had been issued after the EEOC conducted a full investigation and dismissed for lack of probable cause. Judge Duffy expressly limited his ruling, noting that the procedural questions raised in the case at bar were unresolved. *Id.* at 194 n.10.

*Rossini v. Ogilvy & Mather*, 19 Fair Empl.Prac. Cas. 1329 (S.D.N.Y.1979), was also a class action. Judge Brieant granted leave to amend the complaint to reflect the issuance of a right–to–sue notice on the assumption that the notice was valid even though issued prior to the expiration of the 180–day period and prior to any investigation. In denying defendant's motion to dismiss for lack of subject matter jurisdiction, he reasoned that the "internal discretionary determination of the EEOC .... may not be attacked collaterally in this action in which the EEOC is not a party." *Id.* at 1330. Here, the EEOC has appeared specifically to defend its procedure, thus bringing the validity of that procedure squarely into question.

In *Spirt v. Teachers Ins. & Annuity Ass'n*, 416 F.Supp. 1019 (S.D.N.Y.1976), Judge Ward did not directly address the issue presented in this case. He held only that issues relating to the plaintiff's compliance with Title VII's procedural demands should be resolved at trial and therefore denied defendants' motion for partial summary judgment. Furthermore, the plaintiff there had valid claims pending under the Equal Pay Act and 42 U.S.C. § 1981.

Finally, *Villa Lobos v. Aeromexico*, 18 Empl. Prac.Dec. ⸗ 8886 (S.D.N.Y.1978) (Haight, J.), is

### B. *Policy Considerations*

Plaintiff and the EEOC urge the legality of early notices on policy grounds. They emphasize the interest in avoiding purposeless delay in vindicating civil rights claims. The Commission should not, it contends, be forced to act as a "warehouse, storing the claims of victims of discrimination when it is apparent that the Commission's backlog prevents it from acting on a specific charge within 180 days." EEOC Memorandum of Law at 5. Furthermore, the Commission argues, defendants are in no way prejudiced by early notice; if the EEOC cannot assist the parties during 180 days due to its workload, they will have been deprived of nothing if suit is filed earlier. *See Lewis v. FMC Corp.*, 11 Fair Empl.Prac.Cas. 31, 34 (N.D.Cal.1975). In fact, an "employer should welcome the opportunity to have claims against it resolved expeditiously so that it can avoid unnecessary increases in back pay liability." EEOC Memorandum of Law at 8.

These contentions, though superficially appealing, are unpersuasive. The 180-day period is not purposeless, merely because the agency claims it seems unlikely to take final action during that time. If complainants are required to remain before the agency for 180 days, the primary role of the agency in handling such claims is emphasized and assured. Complainants faced with such a rule will naturally press the agency for action, rather than for early right-to-sue letters. The agency, in turn, will be spurred by that pressure and work to improve its efficiency. Congress in fact hoped that the EEOC would "develop its capacity to proceed rapidly with the hearing and decision on charges" filed with it during the 180-day period. S.Rep. No. 92-415, 92d Cong., 1st Sess. 24 (1971). Pressure and incentive to improve efficiency would no doubt diminish if the Commission could simply shift a large part of its workload to the federal courts. The certification by an EEOC official that it is "probable" the agency will be unable "to complete" its processing of a charge within 180 days is merely a prediction that may or may not turn out to be true. Merely commencing agency action within the 180-day period will in some cases lead to settlements and avoid litigation. In other cases, the agency may successfully conclude matters after the 180-day period, as the statutory scheme contemplates. *See Occidental Life Insurance Co. v. EEOC, supra*, 432 U.S. at 360–61, 97 S.Ct. at 2451.

The Commission appears to have given no thought, moreover, to how its regulation will be administered. The regulation creates an important new discretionary power, to be exercised in favor of some complainants and not others. It not only permits the agency to ignore part of its workload, but also enables certain agency officials to determine which part of the workload to ignore and which to address. If bureaucrats are anything like judges, they will likely choose to pursue the more interesting and manageable cases, and to give up the mundane and bothersome ones. In due course, moreover, both the EEOC and the courts would find litigants complaining about and suing to overturn agency decisions granting or denying early notices.

The probable effect of the EEOC's regulation on the federal courts is another important consideration. The Second Circuit has made clear that "[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation," as well as by EEOC regulation. *DeMatteis v. Eastman Kodak Co., supra*, 511 F.2d at 311, (quoting *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951)). Regulation 1601.28(a)(2) in effect permits the agency to

---

also distinguishable. There, the court refused to dismiss the complaint on the ground that the right-to-sue notice was issued after the motion to dismiss was filed. The court reasoned *inter alia*, that the discrimination allegations had been properly raised under the Railway Labor Act and that the EEOC had in fact had the opportunity to investigate the discrimination claims without satisfactory results. Here, by contrast, Title VII is the only basis of jurisdiction, and in issuing the premature notices the EEOC expressly disclaimed any investigation or conciliation effort.

expand federal jurisdiction whenever an aggrieved claimant is impatient with the normal waiting period and the agency feels unable to complete its tasks within the statutory period. Early notices will mean more cases filed in federal courts than if the parties and the agency are required to spend 180 days attempting to resolve the controversy.

Nor is the EEOC correct in asserting that defendant employers will suffer no prejudice if suit may be commenced early. Some employers will be eager to litigate, for the reasons the EEOC suggests. Other employers, however, may very much want to attempt conciliation–as the defendant in this case claims to desire. Once commenced, a federal case is costly to litigate and is likely to cost more for an employer to settle than at the agency level. Employers are not all equally able to finance litigation, and even if an employer believes it will prevail, it must realize that it will seldom recoup the costs of litigation, however meritless. Thus the 180–day period will be particularly important to some employers, and early notices in such cases will reduce the likelihood and frequency of settlement.

In sum, the interests against recognizing early right–to–sue notices outweigh the interests in their favor. The EEOC's regulation is inconsistent with what Congress intended and unsupported by sound policy considerations.

### III

Having concluded that the notices issued by the EEOC in January 1980 contravene Title VII's procedural requirements, it is necessary to determine whether plaintiff's action should be dismissed.

■ Plaintiff's request to amend her complaint to include the notices issued before 180 days had expired must be denied as futile. Nor may plaintiff amend her complaint to allege the notice issued in April 1980, after 180 days had passed from the filing of her first claim. Such relief cannot in fairness be allowed. If plaintiff is allowed to proceed with her suit on the basis of the most recent notice, any aggrieved individual would be able to commence federal court proceedings prematurely, with confidence that a right–to–sue notice would ultimately be issued and could be added to the complaint. Given the heavy caseload in many District Courts, the right–to–sue notice would often be obtained before a judge could dismiss the complaint. Furthermore, it seems entirely inappropriate to give any weight to a right–to–sue letter issued after the EEOC has indicated that it intends to make no effort to process the underlying charge.

On the other hand, defendant's motion to dismiss is also denied. Under the circumstances of this case, the action should be suspended, pending resubmission of plaintiff's charges to the EEOC for a period long enough so that plaintiff's initial charge, officially filed with the EEOC in October 1979, will actually have been before that agency for the requisite 180–day period. If a valid right–to–sue notice is issued at the end of that period, the Court will consider all of plaintiff's claims, in the interests of economy and of justice, including the charges of retaliation that were filed with the EEOC in January 1980. *See Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir. 1980) (per curiam); *see also Weise v. Syracuse University, supra.*

The Supreme Court has made clear in similar circumstances that suspension is preferable to dismissal. In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), a plaintiff suing under the Age Discrimination in Employment Act ("ADEA") had commenced federal proceedings without filing a state complaint. The Court held that resort to state administrative remedies was mandatory, but it did not dismiss the complaint, despite the jurisdictional defect. Rather, the Court stated that "[s]uspension of proceedings is preferable to dismissal with leave to refile." *Id.* at 765 n.13, 99 S.Ct. at 2076 (citations omitted). Although the case dealt with the ADEA, the Court emphasized that that statute and Title VII were subject to similar constructions. *See id.* at 756, 99 S.Ct. at 2071.

748

Dismissal is particularly inappropriate here because it would increase the possibility that plaintiff's claims might be time–barred. That result would be too harsh a remedy. Had plaintiff sued after the first premature right–to–sue letter was issued, she could not in fairness be faulted, for she would have been following a procedure authorized by the EEOC and not authoritatively invalidated by the courts. *Cf. De-Matteis v. Eastman Kodak Co., supra*, 520 F.2d at 411 ("It would be inequitable under such circumstances, and would frustrate the remedial purpose of the Civil Rights Act, to apply the decision of this court so as to bar the claim of a party who filed suit within the period recommended by the administrative body which had been established to help vindicate such statutory rights.").

Plaintiff's original complaint cannot similarly be justified. Nevertheless, her original complaint was undoubtedly an attempt to provide this Court with a basis for preventing the harassment that she claims was intended by defendant's replevin action. Plaintiff should have sought only preliminary relief against the replevin action in her original complaint. But, although she improperly sought removal rather than a stay of the state court action, she should be afforded the same procedural treatment that would be given a plaintiff who sought preliminary relief in good faith. Even if such relief were denied, it would seem proper and just to keep the complaint involved in suspense pending exhaustion of the statutory procedures. *Cf. Eldredge v. Carpenters 46 Northern Cal. Joint Apprenticeship & Training Committee*, 440 F.Supp. 506, 515 (N.D.Cal.1977) ("Even where the deferral requirement is not satisfied, dismissal is unnecessary; the proper course is to retain jurisdiction while plaintiffs seek redress from the state agency.").

Plaintiff's motion to amend her complaint is therefore denied, and defendant's motion is granted only to the extent that plaintiff must return to the EEOC for exhaustion of Title VII's mandatory procedures. Meantime, her case will remain on the suspense calendar of this Court.

SO ORDERED.