Claudia I. HENSCHKE, Ph.D., M.D., Plaintiff,

v.

**The NEW YORK HOSPITAL–CORNELL MEDICAL CENTER and Cornell University Medical College, Defendants.**

**No. 92 Civ. 8260 (LAP).**

United States District Court, S.D. New York.

April 30, 1993.

</div>

Vladeck, Waldman, Elias & Engelhard, P.C. by Judith P. Vladeck, New York City, for plaintiff.

Proskauer Rose Goetz & Mendelsohn by Howard L. Ganz, New York City, for defendant New York Hosp.

Thomas Mead Santoro, Cornell University, Ithaca, NY, for defendant Cornell University Medical College.

## MEMORANDUM AND ORDER

PRESKA, District Judge.

### Background

Plaintiff Dr. Claudia Henschke is employed by The New York Hospital–Cornell Medical Center (the "Hospital") as a treating physician specializing in radiology and by Cornell University Medical School ("Cornell") as a Professor of Radiology. Second Amended Complaint dated February 5, 1993 (the "Complaint") ¶ 5. The Hospital is a private teaching hospital located in New York City, and Cornell is a medical school affiliated with the Hospital. *Id.* ¶ 2. Dr. Henschke was hired by the Hospital as an Assistant Attending Radiologist in the Department of Radiology and by Cornell as an Assistant Professor of Radiology in 1983. *Id.* 7. In 1990, Dr. Henschke was granted tenure by Cornell and as of January 1, 1992, Dr. Henschke was promoted to Attending Radiologist by the Hospital. *Id.* ¶¶ 11–12. Also effective January 1, 1992, Dr. Henschke was appointed Division Chief of a division of the Hospital known as Starr 9 of the Radiology Department.[1] *Id.* ¶ 16. Dr. Henschke's affiliation with the defendants is ongoing. *Id.* ¶ 5.

Dr. Henschke's allegations arise from the appointment of Dr. Michael D.F. Deck as the Acting Chair of the Radiology Department to replace Dr. Joseph P. Whalen, who resigned as the Chair of the Department of Radiology and Radiologist-in-Chief. *Id.* at ¶¶ 17, 19. It is plaintiff's contention that Dr. Deck is a less qualified male, *id.* at ¶ 19, and that plaintiff was not appointed as Acting Chief of the Radiology Department due to gender-based discrimination. *Id.* ¶ 20, 21, 24. Additionally, Dr. Henschke alleges that since the time Dr. Deck was appointed to head the Radiology Department she has been denied information, equipment and personnel necessary for the proper conduct of the affairs of Starr 9 and that this has had a negative impact on patient care. *Id.* ¶ 23.

On September 21, 1992, Dr. Henschke filed a charge of discrimination against the defendants with the Equal Employment Opportunity Commission ("EEOC") containing the same allegations of gender-based discrimination as the Complaint. *Id.* ¶ 3. At the time of the EEOC filing, Dr. Henschke requested that the EEOC issue an early right-to-sue letter, Affidavit In Support of Cornell's F.R.C.P. 12(a) Motion ("Santoro Affidavit") Exhibit 3. The right-to-sue letter was issued by the EEOC on October 22, 1992. *Id.* at Exhibit 4. On November 16, 1992, plaintiff commenced the instant action.

Defendants have moved to dismiss plaintiff's cause of action asserted under Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e, *et seq.* ("Title VII"), on the basis that plaintiff received a right-to-sue letter from the EEOC prior to 180 days from the filing date of the charges. Additionally, defendants move to dismiss plaintiff's causes of action under Title IX of the Education Amendments of 1972, *as amended,* 20 U.S.C. § 1681 *et seq.* ("Title IX") on the basis that Title VII preempts claims of employment discrimination under Title IX. In the alternative, the Hospital moves for summary judgment on the causes of action arising under Title IX on the grounds that the Hospital does not receive federal funding within the meaning of Title IX.

### Discussion

 A district court should grant a motion to dismiss only if, after reviewing the complaint, it appears beyond doubt that plaintiff can prove no set of facts in support of her claim entitling her to relief. *Conley v. Gibon,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). In reviewing a motion to dismiss, "the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff." *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988). Therefore, the Court's task is simply to determine whether the plaintiff has a legal right to seek relief based on the allegations contained in the complaint. *Stern v. General Electric Co.,* dkt. 86 Civ. 4055, 1992 WL 8195 at *4 (S.D.N.Y. Jan. 14, 1992).

 When reviewing the motion to dismiss, the Court is limited to consideration of

---

1. Starr 9 is a division of the Radiology Department specializing in the head and chest.

the four corners of the complaint. However, in certain instances, it is appropriate for the district court to consider documents neither referenced in, nor annexed to, the complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir.1991) (where plaintiff sought revision of stock purchase agreement, on a motion to dismiss the district court could consider the stock purchase agreement, offering memorandum and warrant); *I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991) (court may consider prospectus on motion to dismiss where plaintiff relied solely on that document in formulating the complaint and it is integral to the complaint), *cert. denied,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). The Second Circuit has identified two determining factors in evaluating materials not contained in the complaint on a 12(b)(6) motion: (1) are these documents which plaintiff either has in her possession or has knowledge of; and (2) did plaintiff rely upon these documents in bringing suit. *Cortec Indust., Inc. v. Sum Holding L.P.,* 949 F.2d at 48. A finding that the plaintiff had knowledge of the documents is significant because

> the problem [that] arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Id.* at 48.

All parties to this action have submitted affidavits and documents outside the scope of the pleadings in this matter. Because defendants have moved to dismiss, the Court will not consider any of the documents submitted by the parties other than the moving and responding affidavits of counsel, the various memoranda of law filed by the parties, the "Spencer Waiver"; Affidavit of Howard Ganz Exhibit 2, Santoro Affidavit Exhibit 3, Vladeck Affidavit Exhibit B; and the Notice of Right to Sue. Santoro Affidavit Exhibit 4, Vladeck Affidavit Exhibit C.[2] These last two documents are in plaintiff's possession, and the filing of the present litigation before the 180 days had passed from the filing of the charges with the EEOC evidences the fact that plaintiff relied upon these documents in filing her action. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42.

To the extent that the Hospital's motion to dismiss the Title IX claims is converted to a motion for summary judgment, the Court will consider the Fuller Affidavit. If on a 12(b)(6) motion:

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

Fed.R.Civ.P. 12(b).

**A. *Title VII***

■ Title VII provides in pertinent part:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ... or the Commission has not en-

---

**2.** Specifically, in determining defendants' motion to dismiss, the Court declines to consider: (1) the Affidavit of Deborah Fuller ("Fuller Affidavit"), annexed to New York Hospital's Notice of Motion; (2) the Statement in Support of Defendant the Society of the New York Hospital's Motion for Summary Judgment pursuant to Rule 3(g) of the Civil Rules of the United States District Court for the Southern District of New York; (3) Exhibit 2 to Santoro Affidavit; (4) Exhibits A and B to Affidavit of Judith P. Vladeck in Opposition to Defendants' Motion to Dismiss the Complaint; (5) Affidavit of Claudia I. Henschke in Opposition to Defendants' Motion to Dismiss the Complaint and exhibits attached thereto; and (6) Reply Affidavit of Thomas Mead Santoro Exhibit 5.

tered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after giving such notice a civil action may be brought....

42 U.S.C. § 2000e–5(f)(1). The EEOC has authorized itself to issue "early" right-to-sue letters when a complainant requests a right-to-sue letter prior to the running of 180 days provided that: (1) the respondent is a non-governmental entity; and (2) a designated official "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days ... and has attached a written certificate to that effect." *Id.*

Courts are split as to whether or not the early issuance of a right-to-sue letter by the EEOC presents a jurisdictional bar to a Title VII claim. The only Court of Appeals to address this issue is the Ninth Circuit which has held that:

> Section 2000e–5(f)(1) simply requires the EEOC to issue a notice of right-to-sue if it has failed to file suit or arrange a conciliation agreement within 180 days. Nowhere does the statute prohibit the EEOC from issuing such notice before the expiration of the 180–day period.

*Saulsbury v. Wismer and Becker, Inc.,* 644 F.2d 1251 (9th Cir.1980), *quoting, Bryant v. California Brewers Association,* 585 F.2d 421 (9th Cir.1978), *vacated and remanded on other grounds,* 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980). Prior district court decisions within the Second Circuit are in direct conflict with the Ninth Circuit's holding in *Saulsbury. See People v. Holiday Inns, Inc.,* 656 F.Supp. 675 (W.D.N.Y.1984); *True v. New York State Dept. of Corrections,* 613 F.Supp. 27 (W.D.N.Y.1984); *Spencer v. Banco Real, S.A.,* 87 F.R.D. 739 (S.D.N.Y.1980). In *Spencer,* the Court held that the early issuance of right-to-sue letters by the EEOC violated the express language of Title VII; therefore, the Court remanded the plaintiff's claims to the EEOC and placed the case on the suspense calendar. *Spencer v. Banco Real, S.A.,* 87 F.R.D. at 748.

When interpreting a statute, courts must examine the wording of the statute, the legislative history and purpose, and the role of a given section in relation to the entire act. *U.S. v. Thompson/Center Arms Co.,* —— U.S. ——, —— – ——, 112 S.Ct. 2102, 2107–9, 119 L.Ed.2d 308 (1992). Plaintiff argues that the issuance of the early right-to-sue letter was in accord with EEOC regulations and that this Court should defer to the power of the EEOC to interpret Title VII because due weight must be given to the "contemporaneous construction of a statute by the agency charged with its administration." *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Memorandum") at 8, *quoting, North Haven Bd. of Ed. v. Hufstedler,* 629 F.2d 773 (2d Cir.1980), *aff'd, North Haven Bd. of Ed. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). However, when the interpretation of a statute by the agency charged with its administration is contrary to Congressional intent, courts then "must reject administrative constructions of a statute, whether reached by adjudication or rulemaking ..." *Aluminum Co. of America v. Central Lincoln People's Utility Dist.,* 467 U.S. 380, 402 n. 3, 104 S.Ct. 2472, 2485 n. 3, 81 L.Ed.2d 301 (1984).

It is the opinion of this Court that the issuance of an early right-to-sue letter does "present a jurisdictional deficiency requiring suspension and a remand of plaintiff's Title VII claims to the EEOC." *True v. N.Y. State Dept. of Correctional Services,* 613 F.Supp. at 29. The language of section 2000e–5(f)(1) explicitly requires that one of two events occur before the issuance of a right-to-sue letter; either (i) the EEOC must dismiss the complaint; [3] or (ii) 180 days must have run from the filing of the charges with the EEOC during which time the EEOC has taken no action. *See Spencer v. Banco Real, S.A.,* 87 F.R.D. at 743 ("This analysis makes clear that occurrence of one of these two

---

**3.** A complaint will be dismissed when a determination is made that there is no reasonable cause to believe that a charge is true. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 464 n. 3, 102 S.Ct. 1883, 1888 n. 3, 72 L.Ed.2d 262, *reh'g. denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982).

events is a necessary—not merely sufficient—condition for commencement of private civil actions.") This Court is cognizant of the direction given by the Supreme Court of the United States that courts should reject "any suggestion that the EEOC may adopt regulations that are inconsistent with the statutory mandate." *Mohasco Corp. v. Silver,* 447 U.S. 807, 823–25, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980).

In reaching this decision, the Court is not addressing the merits of plaintiff's (and the Ninth Circuit's [4]) argument that forcing plaintiff to wait 180 days will serve an injustice which contradicts the intent of Title VII. Plaintiff's Memorandum at 11. Unfortunately, it may be that reaching a conciliation agreement in the present instance is impossible and that in some 180 days the Court and the parties will find themselves in the exact same position they find themselves in today. However, given the Congressional mandate that Title VII claims can only be filed after a dismissal of the charges by the EEOC or the lapsing of 180 days without action by the EEOC, this Court has no alternative but to grant the relief sought by defendants on the Title VII cause of action. For the reasons set forth in *Spencer,* plaintiff's Title VII claim is suspended pending resubmission of plaintiff's charges to the EEOC for a period long enough so plaintiff's charge will actually have been before the agency for the requisite

180-day period. Thereafter, plaintiff is granted leave to amend her Title VII cause of action to so indicate, if she deems it appropriate. In any event, plaintiff may reactivate her Title VII claim upon five days' notice.

## B. *Title IX*

Title IX provides, in pertinent part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

20 U.S.C. § 1681(a). There is an implied private right of action for gender-based discrimination under Title IX. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The scope of protection under Title IX includes a prohibition against gender-based employment discrimination by educational programs receiving federal financial support. *North Haven Brd. of Ed. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982).[5] Additionally, the remedy of damages is available to an individual in an action to enforce Title IX. *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, ——, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992).[6] The defendants argue, however, that Title VII preempts the plaintiff from

---

4. "[F]orcing victims of discrimination to mark time simply for the sake of letting time pass when conciliation and investigation are impossible is not only senseless, but a 'travesty.'" *Bryant v. California Brewers Ass'n.,* 585 F.2d at 425.

5. In *North Haven,* two separate school districts brought suit challenging the authority of the Department of Health, Education and Welfare ("HEW") to issue regulations pursuant to section 902 of Title IX (Subpart E) prohibiting federally funded education programs from discriminating on the basis of gender with respect to employment. In both cases, the district court dismissed on the grounds that Title IX was not intended to cover employment discrimination. The Second Circuit reversed, holding that § 901 was intended to cover employment discrimination. After an extensive review of the legislative history of Title IX as well as the postenactment history of Title IX, the Supreme Court held that Title IX prohibits employment-based discrimination. The intended scope of Title IX "confirms Con-

gress' desire to ban employment discrimination in federally financed education programs." *North Haven Bd. of Ed. v. Bell,* 456 U.S. at 530–31, 102 S.Ct. at 1923.

6. In *Franklin,* a female high school student brought an action under Title IX seeking damages for alleged gender-based discrimination arising from alleged sexual harassment by a coach-teacher. The Court reaffirmed its prior decision in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and found that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Franklin v. Gwinnett County Public Schools,* —— U.S. at ——, 112 S.Ct. at 1033, *quoting, Bell v. Hood,* 327 U.S. at 684, 66 S.Ct. at 777. After reviewing the legislative history of amendments to Title IX following the decision in *Cannon,* the Court found that Congress did not intend to limit the scope of remedies available under Title IX. *Id.* —— U.S. at ——, 112 S.Ct. at 1036.

asserting a private cause of action for employment discrimination under Title IX.

Defendants rely upon *Storey v. Board of Regents*, 600 F.Supp. 838, *amended*, 604 F.Supp. 1200 (W.D.Wis.1985). The Court in *Storey* held that "Congress intended to make Title VII a nonexclusive avenue of relief only with regard to remedies already in existence or to subsequently created remedies Congress expressly or by clear implication made available to victims of discrimination in employment." *Storey v. Board of Regents*, 604 F.Supp. at 1201.

In *Storey*, plaintiff alleged that she was denied an appointment as an assistant professor in the University of Wisconsin–Madison Department of Poultry Science, based on intentional gender-based discrimination. Plaintiff asserted claims under the following three statutory authorities: Title IX, Title VII and 42 U.S.C. Section 1983. The Court granted defendant's motion to dismiss plaintiff's claims under Title IX on the grounds that Title VII provides the exclusive remedy for plaintiff's claims of employment discrimination. The Court found that:

> [F]ollowing enactment of Title VII, Congress has been free to provide victims of employment-related-discrimination with additional remedies. It has been free to do so expressly. It has been free to do so by implication, but against the background of Title VII, its intention to do so requires a powerful implication on its part. Title IX's only express remedy is termination, which is unavailable to plaintiff. Hence plaintiff's Title IX claim will stand only if Title IX's legislative history unmistakenly reveals Congress intended to bestow on victims of employment discrimination an avenue of relief in addition to Title VII.... Title IX affords no direct remedy to victims.

*Storey v. Board of Regents*, 604 F.Supp. at 1205.

 This Court rejects the finding in *Storey* and finds that a private right of action

for employment discrimination exists under Title IX separate and apart from Title VII and without regard to the availability of the Title VII remedy. Following *Cannon*, it is undisputed that a private right of action exists under Title IX. Thereafter, in *North Haven*, the Supreme Court undertook an extensive analysis of the legislative history of Title IX and determined that Congress intended Title IX to serve as a bar to employment discrimination by educational programs receiving federal funding. *See North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 102 S.Ct. 1912.[7] There is no suggestion in either the Supreme Court opinion or the Second Circuit opinion in *North Haven* that the scope of Title IX's protection against employment discrimination would not extend to an action by an individual who is also seeking relief under Title VII. Finally, the Supreme Court has recently held that a damages remedy is available in an action brought to enforce Title IX. *Franklin v. Gwinnett County Public Schools*, —— U.S. ——, ——, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992). Reading all of the above together, it is the opinion of this Court that the legislative history of Title IX demonstrates an intent on the part of Congress to have Title IX serve as an additional protection against gender-based discrimination in educational programs receiving federal funding regardless of the availability of a remedy under Title VII, and the Supreme Court and Second Circuit interpretations of the statute do not permit the contrary conclusion. Accordingly, the defendants' motions to dismiss for failure to state a claim are denied.

The Hospital's motion to dismiss the Title IX claims for lack of federal funding is converted to a motion for summary judgment, and, in accordance with the Stipulation and Order dated March 19, 1993, that motion will be held in abeyance pending discovery on the question of whether the Hospital receives federal funding within the meaning of Title IX.

Plaintiff asserts one claim under Title IX and a separate claim under the regulations

---

7. When Senator Bayh introduced the provisions which would ultimately be enacted as Title IX he stated; "[t]he heart of this amendment is a provision banning sex discrimination in education programs receiving Federal funds. The amendment would cover such crucial aspects as admissions procedures, scholarships, and faculty employment, with limited exceptions." *North Haven v. Bell*, 456 U.S. at 524, 102 S.Ct. at 1919, *quoting*, 118 Cong.Rec. 5803 (1972).

promulgated pursuant to Title IX, *see* 34 C.F.R. § 106.40 *et seq.* (the "Regulations"). Cornell argues that the claim under the Regulations should be dismissed as redundant. Plaintiff rejects this argument relying on, *inter alia, Sharif v. New York State Educ. Dept.,* 709 F.Supp. 345 (S.D.N.Y.1989). Neither *Sharif* nor any of the other cases relied on by plaintiff stand for the proposition that separate causes of action exist under both Title IX and the Regulations. On the other hand, Cornell has shown no prejudice resulting from the supposedly redundant causes of action. Accordingly, at this early stage in the litigation, Cornell's motion to dismiss plaintiff's fifth claim for relief is denied without prejudice to renewal at a later time.

### Conclusion

For the reasons set forth above:

(a) defendants' motions to dismiss plaintiff's first claim for relief (her Title VII claim) is granted to the extent that plaintiff's first claim is suspended pending resubmission of plaintiff's charges to the EEOC for a period long enough so plaintiff's charge will actually have been before the agency for the requisite 180–day period; plaintiff may amend her claim to reflect the expiration of the 180–day period if she so desires and, in any event, may reactivate her Title VII claim upon five days' notice;

(b) defendants' motions to dismiss plaintiff's fourth and fifth claims for relief (her Title IX claims) on the ground that Title VII preempts Title IX under the circumstances presented here are denied;

(c) the Hospital's motion to dismiss plaintiff's fourth and fifth claims on the ground that the Hospital does not receive federal funding within the meaning of Title IX is converted to a motion for summary judgment, and that motion is held in abeyance pursuant to the Stipulation and Order dated March 19, 1993;

(d) Cornell's motion to dismiss plaintiff's fifth claim for relief (her claim under the Title IX regulations, 34 C.F.R. § 106.51 *et seq.*) is denied without prejudice to renewal at a later time; and

(e) defendants' motions to dismiss plaintiff's state law claim are denied.

SO ORDERED.